UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


CODY LEE ASBURY,

                    Petitioner,                    Case No. 1:16-cv-701

v.                                                 Honorable Gordon J. Quist

CARMEN PALMER,

                    Respondent.
_____/

## REPORT AND RECOMMENDATION

              This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C.

§ 2254. On June 19, 2012, Petitioner Cody Lee Asbury entered a plea of *nolo contendere* to one

count of second-degree murder, MICH. COMP. LAWS § 750.317, in the Genessee County Circuit

Court. In exchange for his plea, the prosecutor agreed to amend Petitioner's charge from first-degree

to second-degree murder and noted that she would be asking the court to depart from the guidelines

minimum range to impose a minimum sentence of 40 years' imprisonment[1]. Petitioner is presently

serving a sentence of 35 to 65 years at the Michigan Reformatory in Ionia, Michigan. As set forth

fully below, Petitioner raises six grounds for relief in his habeas petition. Upon review and applying

the standards required by the Antiterrorism and Effective Death Penalty Act of 1996, PUB. L. 104-

132, 110 STAT. 1214 (AEDPA), I find that all habeas grounds are either not cognizable or without

merit. Accordingly, I recommend that the petition be denied.

_____

[1]Petitioner did not agree to the 40 year minimum, he simply acknowledged that he was aware the prosecutor
would seek the departure. At sentencing, Petitioner argued that he should be sentenced within the guidelines range.

## Procedural and Factual Background

On November 16, 2010, at around 5:30 a.m., the Flint Police Department dispatched officer John Cramer to the corner of Leith and Minnesota in Flint, Michigan. (Prelim. Examination Tr., ECF No. 6-2, PageID.283-284).[2]   When Officer Cramer arrived at the location he found a bloodied, partially-clad, dead woman lying in the road near the northeast corner of the intersection. (*Id*.)   The woman was identified as Amanda Lamson. (*Id*., PageID.293-294.)

The next day, Flint police sergeant Jeff Collins took Petitioner into custody, brought him to the Flint Police Department, and, after informing Petitioner of his rights, interviewed him. (*Id*., PageID.295-296.)   Petitioner told Sergeant Collins that Petitioner and his friend Tommie Lee Jones, after drinking alcohol and smoking marijuana, left a house party at around 4:30 a.m. on November 16, 2010. (*Id*., PageID.300.)   Petitioner, driving his 1994 Buick Skylark, and Jones, driving his pick-up truck, traveled to Leith and Minnesota to find Ms. Lamson to "pick on her." (*Id*.)

They found her sitting near a tree on the east side of Minnesota. (*Id*., PageID.301.) Petitioner approached Ms. Lamson, threw her walker to the side, and he and Jones proceeded to kick her and stomp her in the head several times. (*Id*.)   One of the men dragged Ms. Lamson into the street. (*Id*.) They returned to their vehicles. (*Id*., PageID.301-302.) Petitioner purposely drove over Ms. Lamson with his Buick, swerving left to make sure he hit her. (*Id*., PageID.302.)  He turned the

---

[2]Although Petitioner entered a plea of no contest, there are still several transcripts among the Rule 5 materials submitted by respondent.  The transcripts shall be referenced as follows:

| | |
|---|---|
| May 27, 2011 Preliminary Examination Transcript | (Prelim. Examination Tr., ECF No. 6-2, PageID.__) |
| March 6, 2010 Plea Hearing Transcript | (Plea Tr. I,  ECF No. 6-6, PageID.__) |
| April 18, 2012 Motion Hearings | (Mot. Hr'g Tr. I, ECF No. 6-8, PageID.__) |
| June 19, 2012 Plea Hearing Transcript | (Plea Tr. II, ECF No. 6-9, PageID.__) |
| July 16, 2012 Sentencing Transcript | (Sentencing Tr., ECF No. 6-10, PageID.__) |
| January 28, 2013 Motion Hearing | (Mot. Hr'g Tr. II, ECF No. 6-11, PageID.__). |

vehicle around and ran over her again. (*Id*.) Then, Jones ran over her with the pick-up truck and he and Petitioner headed for home. (*Id*.)

The prosecutor offered Petitioner a deal. She offered to amend the first-degree murder charge to two charges: second-degree murder and assault with intent to do great bodily harm less than murder. (Plea Tr. I, ECF No. 6-6, PageID.327-328.) If Petitioner pleaded guilty to those charges, and if he testified truthfully at Jones' trial, the prosecutor would agree to a sentence of 30 to 50 years, whether or not that fell within the guidelines. (*Id*.) Petitioner accepted the deal. Petitioner described the incident in some detail to provide factual support for his plea. (*Id*., PageID.332-342.)

The court put off Petitioner's sentencing until after Jones' trial. At Jones' trial, Petitioner simply refused to offer the testimony required by his agreement. Jones was, nonetheless, convicted of first-degree murder which resulted in a mandatory sentence of life imprisonment with no chance for parole.

Because Petitioner had failed to live up to his end of the plea bargain, the prosecutor asked the court to withdraw its acceptance of Petitioner's plea. At the proceeding where the court announced its decision on the prosecutor's motion, Petitioner's counsel sought leave to withdraw from his representation of Petitioner because Petitioner was simply refusing to cooperate with counsel. (Mot. Hr'g Tr. I, ECF No. 6-8.) The court thoroughly questioned Petitioner in an attempt to ascertain whether Petitioner's counsel had failed Petitioner in some regard. Petitioner indicated that he felt pushed to plead and testify by the threat of a life sentence for the first-degree murder charge. The court pointed out that, particularly in light of the result of Jones' trial, that entering a plea based on the very realistic threat of a life sentence appeared to be a sound decision based on

sound advice. The court concluded that even though Petitioner was unhappy with his present circumstances, those circumstances were a product of Petitioner's actions, not some failure by counsel. Accordingly, the court denied Petitioner's request for new counsel, withdrew its acceptance of Petitioner's plea, and scheduled Petitioner's trial on the first-degree murder charge.

On June 19, 2012, the first scheduled day of trial, the prosecutor made a final plea offer, the offer that Petitioner accepted: Petitioner would plead no contest to the second-degree murder of Amanda Lamson and the prosecutor would request (although Petitioner did not agree to) a minimum sentence of 40 years. (Plea Tr. II, ECF No. 6-9, PageID.370-385.) Using the preliminary examination testimony, Petitioner's initial plea colloquy, and the Jones' trial testimony, the court concluded there was a sufficient factual basis for the plea. (*Id.*, PageID.384.)

Petitioner had no prior record; so the guidelines scoring focused exclusively on the offense variables. (Sentencing Hr'g Tr., ECF No. 6-10.) The court scored Petitioner's offense variables at 171 points yielding a minimum sentence range of 162 to 270 months. Because a score of 100 points yielded the same range, and the guidelines offered no higher range no matter how great the OV score once you reached 100 points, the prosecutor argued the court should reflect Petitioner's higher score in a minimum sentence that exceeded the guidelines.[3] The court sentenced Petitioner to 35 to 65 years imprisonment. (Sentencing Tr., ECF No. 6-10, PageID.400-401.)

_____

[3]The prosecutor stated that because the 171 points was 71% higher than the 100 point threshold, the minimum sentence should be increased correspondingly to 40 years. (Sentencing Tr., ECF No. 6-10, PageID.397.) In a post-judgment attack on the validity of the sentence, Petitioner challenged the prosecutor's computation. (Mot. Hr'g Tr. II, ECF No. 6-11.) He argued that because the first two point ranges, OV level I (0-49 points) and OV level II (50-99 points) were roughly 50 points, OV level III (100+ points) should be viewed that way as well. (*Id.*, PageID.405-406.) Thus, according to Petitioner, the court should not be comparing 171 points to 100 points; it should be comparing 171 points to 149 points, the extrapolated top point of the OV level III range. (*Id.*) Petitioner contended that the grid for a hypothetical OV level IV including 171 points would yield a maximum minimum of 25 years. (*Id.*, PageID.406.) The court denied the motion referring Petitioner to the sentencing record for his reasons for departing and the extent of the departure. (*Id.*, PageID.410-411.)

-4-

Petitioner filed a delayed application for leave to appeal on February 8, 2013, raising only one issue:

I.      THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO COMPLY WITH THE STANDARDS FOR JUSTIFYING THE EXTENT OF A DEPARTURE FROM THE SENTENCE GUIDELINES AS RECOMMENDED BY *PEOPLE V. SMITH*, 482 MICH 292 (2008) AND FOR FAILING TO IMPOSE A PROPORTIONATE SENTENCE TO THE OFFENSE AND TO THE OFFENDER.

(Appl. for Leave to Appeal, ECF No. 6-16, PageID.489.) The Court of Appeals denied leave for lack of merit in the grounds presented by order entered October 28, 2013. (Mich. Ct. App. Ord., ECF No. 6-16, PageID.485.) Petitioner filed a pro per motion for reconsideration. (Mot. for Recons., ECF No. 6-17, PageID.614-617.) In the motion, Petitioner argued that his appellate counsel had been ineffective, that counsel had failed to raise issues on appeal despite Petitioner's request. (*Id.*) Petitioner also contended that he did not have sufficient time to submit his own application for leave to appeal after he discovered his attorney failed to raise all of Petitioner's issues. (*Id.*) The Court of Appeals denied Petitioner's motion for reconsideration by order entered December 11, 2013. (Mich. Ct. App. Ord., ECF No. 6-17, PageID.626.)

Petitioner filed an application for leave to appeal in the Michigan Supreme Court raising the same issue he had raised in the Court of Appeals as well as the following new issues:

II.     I WAS UNLAWFULLY ARRESTED AND TAKEN INTO CUSTODY BY THE FLINT POLICE WITHOUT AN ARREST WARRANT TO AUTHORIZE MY ARREST. I WAS ARRESTED 11/17/10. MY DUE PROCESS RIGHTS WERE VIOLATED BECAUSE THE FLINT POLICE AP[P]REHENDED ME WITH NO WARRANT, EVIDENCE OR PROBABLE CAUSE TO ARREST ME AT MY HOME WITHOUT AN ARREST WARRANT, NO WARRANT WAS FILED UNTIL 11/19/10.

III.    ON 11/17/10 THE FLINT POLICE ARRESTED ME AND TOOK ME INTO UNLAWFUL CUSTODY. I WAS UNDER THE INFLUENCE OF DRUGS

AND ALCOHOL AND I WAS INTERVIEWED BY POLICE AND THEY PURPORTEDLY OBTAINED STATEMENTS FROM ME, WHICH WERE USED AGAINST ME. THE STATEMENTS THE POLICE OBTAINED WERE COERCED AND OBTAINED WHILE I WAS IN UNLAWFUL CUSTODY.

IV. ON 11/17/10 I WAS ARRIVING AT MY PLACE OF RESIDENCE WHEN I WITNESSED THE FLINT POLICE LOADING MY VEHICLE ON TO A FLAT BED TRUCK. OTHERS WITNESSED POLICE SEARCH THROUGH MY VEHICLE BEFORE I ARRIVED. THE FLINT POLICE DID NOT HAVE A WARRANT TO SEARCH OR SEIZE MY CAR. I DID NOT GIVE CONSENT TO POLICE TO SEARCH MY CAR.

(Appl. for Leave to Appeal, ECF No. 6-18, PageID.629, 634-636.) The Michigan Supreme Court

denied leave by order entered April 28, 2014. (Mich. Ord., ECF No. 6-18, PageID.627.)

On July 13, 2014, Petitioner filed a motion for relief from judgment pursuant to

MICH. CT. R. 6.500 et seq. in the Genesee County Circuit Court. He raised four issues:

V. WHETHER THE COURT HAD SUBJECT-MATTER JURISDICTION WHERE NO SUFFICIENT/PROPER FELONY COMPLAINT/ AFFIDAVIT/WARRANT AND RETURN WAS FILED, PROPERLY OR AT ALL, WAS A VIOLATION OF THE DEFENDANT'S CONSTITUTIONAL RIGHTS UNDER THE U.S. CONSTITUTIONAL AMENDMENTS IV, V, VI, XIV, MICHIGAN CONSTITUTION 1963 ART. 1 Sec.'s 11, 17, 20, and MCLA 762.1a; and FEDERAL RULES 3 and 4 OF CRIMINAL PROCEDURES.

VI. SHOULD THE COURT ALLOW THE DEFENDANT TO WITHDRAW HIS NOLO PLEA WHERE THE PLEA WAS PROCEDURALLY DEFECTIVE, WHERE HE WAS COERCED INTO THE PLEA THROUGH HIS ATTORNEY THREATS AND FALSE PROMISES, WHERE TRIAL COUNSEL'S PERFORMANCE WAS SO DEFICIENT THAT THE DEFENDANT HAD NO OTHER CHOICE EXCEPT TO TAKE A PLEA, AND WHERE JUDICIAL MISCONDUCT PREJUDICED THE DEFENDANT, LEAVING HIM NO OTHER CHOICE EXCEPT TO BELIEVE THAT TAKING THE PLEA WAS HIS ONLY OPTION.

VII.    SHOULD THE COURT GRANT THE DEFENDANT A GINTHER HEARING WHERE HIS TRIAL ATTORNEY NON-PERFORMANCE FORCED HIM INTO A PLEA THAT HE DID NOT WANT.

VIII.   SHOULD THE COURT GRANT THE DEFENDANT A GINTHER HEARING WHERE HIS APPELLANT ATTORNEY WAS INEFFECTIVE, AND WHERE HIS DEFICIENCY PREJUDICED DEFENDANT.

(Mot., ECF No. 6-12, Page ID.417.) The Genesee County Circuit Court denied Petitioner's motion by order signed October 15, 2014. (Ord., ECF No. 6-13, PageID.475-477.) Petitioner asked the court to reconsider (Mot. for Recons., ECF No. 6-14), but his motion was denied (Ord., ECF No. 6-15.)

Petitioner filed an application for leave to appeal in the Michigan Court of Appeals. Although he identified the issues differently in that court, he raised three of the four issues raised in his Rule 6.500 motion. He specifically excluded Issue V above regarding subject matter jurisdiction. He stated: "Subject Matter Jurisdiction (which was not appealed in this application, but filed as an original action as required by law)." (Appl. for Leave to Appeal, ECF No. 6-19, PageID.656.) There is no record of such an original action in the Michigan Court of Appeals. The court of appeals denied the application by order entered June 22, 2015. (Mich. Ct. App. Ord., ECF No. 6-19, PageID.643.) Petitioner raised the same issues, again excluding the subject matter jurisdiction issue, in an application for leave to appeal to the Michigan Supreme Court. (Appl. for Leave to Appeal, ECF No. 6-20, PageID.683-688.) That court denied leave by order entered May 24, 2016. (Mich. Ord., ECF No. 6-20, PageID.682.)

Petitioner timely filed his habeas petition on June 7, 2016. The petition raises six issues:

1. THE PETITIONER IS ILLEGALLY INCARCERATED UNDER AN INVALID SENTENCE AS THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO COMPLY WITH THE STANDARDS FOR JUSTIFYING THE EXTENT OF A DEPARTURE FROM THE SENTENCE GUIDELINES AS RECOMMENDED BY PEOPLE V. SMITH, 482 MICH 292 (2008) AND FOR FAILING TO IMPOSE A PROPORTIONATE SENTENCE TO THE OFFENSE AND TO THE OFFENDER. (Issue I above).

2. THE PETITIONER IS ILLEGALLY RESTRAINED FROM HIS LIBERTY AS THE RECORD IS ABSENT OF A PROPER/SUFFICIENT FELONY COMPLAINT/AFFIDAVIT FOR PROBABLY CAUSE/ARREST WARRANT OR WARRANT RETURN FILED WITH THE CLERK OF THE COURT, THEREFORE, THE COURT NEVER OBTAINED SUBJECT MATTER JURISDICTION, MAKING HIS INCARCERATION UNCONSTITUTIONAL. (Issue V above).

3. THE PETITIONER IS BEING ILLEGALLY RESTRAINED OF HIS LIBERTY, AS HIS INCARCERATION IS THE RESULT OF A PROCEDURALLY DEFECTIVE PLEA. (Issue VI above).

4. THE PETITIONER IS BEING ILLEGALLY RESTRAINED OF HIS LIBERTY AS HIS INCARCERATION IS THE RESULT OF A COERCED PLEA. (Issue VI above).

5. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL: TRIAL COUNSEL FAILED TO REPRESENT THE PETITIONER DURING TRIAL, AS HE DID NOT CONDUCT AN INVESTIGATION OF THE EVIDENCE AGAINST THE PETITIONER, FILE ANY PRE-TRIAL MOTIONS, OR REPRESENT HIM DURING THE PLEA AND SENTENCING. (Issue VII above).

6. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL: APPELLATE COUNSEL FAILED TO ORDER/REQUEST THE ENTIRE RECORD TO SEE AND MAKE A COMPETENT DECISION AS TO WHAT APPELLATE ISSUES THE PETITIONER HAD, AS APPELLATE COUNSEL FAILED TO RAISE INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL. (Issue VIII above).

(Pet., ECF No. 1, PageID.5-12.) Petitioner has failed to raise a meritorious federal claim.

## Standard of Review

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, PUB. L. 104-132, 110 STAT. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655. In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655. Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 132 S. Ct. 38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have

appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 132 S. Ct. at 44).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 2015 WL 1400852, at *3 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (quotations marks omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

**Discussion**

I.       Petitioner's sentence of 35 to 65 years imprisonment (Habeas issue 1)

Petitioner challenges his sentence for two reasons: first, he contends the trial court departed from the guidelines minimum range in violation of state law; and second, he argues that his sentence is disproportionate. His claims are not cognizable on habeas review.

"[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 131 S. Ct. 13, 16 (2010) (quoting 28 U.S.C. § 2254(a)). A habeas petition must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4, RULES GOVERNING HABEAS CORPUS CASES). The federal courts have no power to intervene on the basis of a perceived error of state law. *Wilson*, 131 S. Ct. at 14; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 67-68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

Claims concerning the improper application of sentencing guidelines, whether by improper scoring or improper departure from the guidelines, are state-law claims and typically are not cognizable in habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (the sentencing guidelines establish only rules of state law). There is no constitutional right to individualized sentencing. *Harmelin v. Michigan*, 501 U.S. 957, 995 (1991); *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995); *see also*

*Lockett v. Ohio*, 438 U.S. 586, 604-05 (1978).  Moreover, a criminal defendant has "no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations." *Doyle v. Scutt*, 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004); *accord Austin v. Jackson*, 213 F.3d 298, 300 (6th Cir. 2000); *Lovely v. Jackson*, 337 F. Supp. 2d 969, 977 (E.D. Mich. 2004); *Thomas v. Foltz*, 654 F. Supp. 105, 106-07 (E.D. Mich. 1987).

Plaintiff's suggestion that his sentence was disproportionate does not change the analysis.  The language employed by Petitioner, that his sentence is not "proportionate . . . to the offense and the offender[,]" (Pet., ECF No.1, PageID.5), is a reference to the state law principle of proportionality explained in *People v. Milbourn*, 461 N.W.2d. 1 (Mich. 1990).  In *Milbourn*, the Michigan Supreme Court held that a sentencing court must exercise its discretion within the bounds of Michigan's legislatively prescribed sentence range and pursuant to the intent of Michigan's legislative scheme of dispensing punishment according to the nature of the offense and the background of the offender.  *Milbourn*, 461 N.W.2d at 9-10; *People v. Babcock*, 666 N.W.2d 231, 236 (Mich. 2003).  It is plain that *Milbourn* was decided under state, not federal, principles.  *See Lunsford v. Hofbauer*, No. 94-2128, 1995 WL 236677, at * 2 (6th Cir. Apr. 21, 1995); *Atkins v. Overton*, 843 F. Supp. 258, 260 (E.D. Mich. 1994).  As previously discussed, a federal court may grant habeas relief solely on the basis of federal law and has no power to intervene on the basis of a perceived error of state law.  *See Wilson*, 131 S. Ct. at 14; *Bradshaw*, 546 U.S. at 76; *Pulley*, 465 U.S. at 41.  Thus, Petitioner's claim based on *Milbourn* is not cognizable in a habeas corpus action.

To the extent Petitioner's argument could be stretched to mean that his sentence was disproportionate under the Eighth Amendment, the argument would still fail.  The United States Constitution does not require strict proportionality between a crime and its punishment.  *Harmelin*,

501 U.S. at 965; *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000). "Consequently, only an extreme disparity between crime and sentence offends the Eighth Amendment." *Marks*, 209 F.3d at 583; *see also Lockyer v. Andrade*, 538 U.S. 63, 77 (2003) (gross disproportionality principle applies only in the extraordinary case); *Ewing v. California*, 538 U.S. 11, 36 (2003) (principle applies only in "'the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality'") (quoting *Rummel v. Estelle*, 445 U.S. 263, 285 (1980)). A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'" *Austin*, 213 F.3d at (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)). Further, "[f]ederal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole." *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995). Petitioner was not sentenced to death or life in prison without the possibility of parole, and his sentence falls within the maximum penalty under state law. Petitioner's sentence therefore does not present the extraordinary case that runs afoul of the proportionality requirement implicit in the Eighth Amendment's ban on cruel and unusual punishment.

II.     Petitioner's jurisdictional challenges (Habeas issue 2)

Petitioner claims the Genessee County Circuit Court did not have subject matter jurisdiction because the record does not include a felony complaint, an affidavit for probable cause, an arrest warrant, or a warrant return. (Pet., ECF No. 1, PageID.6.) Petitioner raised the issue for the first time in his motion for relief from judgment. The trial court rejected Petitioner's claim:

> Defendant argues that he can raise the issue of subject matter jurisdiction at any time, which is correct. *See Paulson v Secretary of State*, 154 Mich. App. 626, 630; 398 N.W.2d 477 (1986). Although Defendant claims to be raising the issue of subject

matter jurisdiction, which cannot be waived and can be raised at any time, he is actually raising a claim of personal jurisdiction, which can be waived. *See People v Richards*, 205 Mich. App. 438, 444; 517 N.W.2d 823 (1994).

"Subject matter jurisdiction concerns a court's abstract power to try a case of the kind or character of the one pending and *is not dependent on the particular facts of the case*." *People v Lown*, 488 Mich. 242, 268; 794 N.W.2d 9 (2011) (quotation marks, citations, and some emphasis omitted). "Michigan circuit courts are courts of general jurisdiction and unquestionably have jurisdiction over felony cases." *Id.* A circuit court plainly has subject matter jurisdiction to hear and try criminal cases against defendants. Const 1963, art 6, §§ 1 and 13; MICH. COMP. LAWS § 600.151; MICH. COMP. LAWS § 600.601; MICH. COMP. LAWS § 767.1; *Lown*, at 268.

"[Personal] jurisdiction is vested in the circuit court upon the filing of a return of the magistrate before whom the defendant waived preliminary examination . . . . or before whom the defendant had been examined." *People v Goecke*, 457 Mich. 442, 458; 579 N.W.2d 868 (1998) (quotation marks and citations omitted). "[A]n illegal arrest or arrest warrant issued on defective procedure will not divest a court of jurisdiction when the court has jurisdiction over the charged offense and the defendant appears before the court." *Porter v Porter*, 285 Mich. App. 450, 462; 776 N.W.2d 377 (2009); *see also People v Rice*, 192 Mich. App. 240, 244; 481 N.W.2d 10 (1991) ("[t]he invalidity of an arrest does not deprive a court of jurisdiction to try a defendant.").

In this case, this Court clearly has subject-matter jurisdiction to try a criminal case when the charge is open murder. Furthermore, a preliminary examination was held and the district court bound Defendant over to this Court on May 27, 2011, to face trial on the open murder charge. This Court clearly had personal jurisdiction over Defendant in this case. Defendant's arguments concerning an invalid or improper arrest warrant are meritless. *See Porter* and *Rice, supra.* Moreover, Defendant appeared in court and pleaded no contest to 2nd degree murder. Consequently, defendant has waived the right to assert a claim of personal jurisdiction error. *See People v Carter*, 462 Mich. 206, 213-216; 612 N.W.2d 144 (2000) (one who waives his rights to object to an error may not then seek appellate review of a claim depravation [sic] of those rights because the waiver extinguishes any error).

(Ord., ECF No. 6-13, PageID.477.) As set forth above, Petitioner never raised the issue in the Michigan appellate courts.

Before the court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838,

842 (1999). Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. *See O'Sullivan*, 526 U.S. at 842; *Picard v. Connor*, 404 U.S. 270, 275-77 (1971) (cited by *Duncan v. Henry*, 513 U.S. 364, 365 (1995) and *Anderson v. Harless*, 459 U.S. 4, 6 (1982)). To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court. *Duncan*, 513 U.S. at 365-66; *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845.

Exhaustion is only a problem, however, if there is a state court remedy available for petitioner to pursue, thus providing the state courts with an opportunity to cure any constitutional infirmities in the state court conviction. *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). If no further state remedy is available to the petitioner, exhaustion does not present a problem, but the claim is procedurally defaulted and the federal court must determine whether cause and prejudice exists to excuse the failure to present the claim in state court. *Id.* Under Michigan law effective August 1, 1995, a defendant may file one motion for relief from judgment under Michigan Court Rule 6.500 *et. seq*. *See* MICH. CT. R. 6.502(G)(1). Petitioner already has filed his one allotted motion. He therefore has no available remedy; thus, the analysis shifts from failure to exhaust state court remedies to procedural default.

"If a petitioner does not satisfy the procedural requirements for bringing an error to the state court's attention – whether in trial, appellate, or habeas proceedings, as state law may

-15-

require – procedural default will bar federal review." *Magwood v. Patterson*, 561 U.S. 320, 130 S.

Ct. 2788, 2801 (2010). Nevertheless, the U.S. Supreme Court has held that federal courts are not

required to address a procedural-default issue before deciding against the petitioner on the merits.

*See Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518,

525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if

it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved

complicated issues of state law."), and *Nobles v. Johnson*, 127 F.3d 409, 423-24 (5th Cir. 1997)

(deciding against the petitioner on the merits even though the claim was procedurally defaulted)).

*See also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the

merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts

of the State."). Where, as here, the procedural default issue raises more questions than the case on

the merits, the Court may assume without deciding that there was no procedural default or that

Petitioner could show cause and prejudice for that default. *See Hudson*, 351 F.3d at 215-16; *Binder*

*v. Stegall*, 198 F.3d 177, 178 (6th Cir. 1999).

Turning to the merits of Petitioner's jurisdictional challenge, the determination of

whether a state court is vested with jurisdiction under state law over a criminal case is a function of

the state courts, not the federal courts. *Wills v. Egeler*, 532 F. 2d 1058, 1059 (6th Cir. 1976). It is

well-settled that a purported violation of state law does not provide a basis for federal habeas relief.

*See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). "In conducting habeas review, a federal court

is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United

States." *Id.*

Moreover, the state court here determined that there were no jurisdictional defects. It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle*, 502 U.S. at 68. The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983). The Sixth Circuit repeatedly has recognized "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'" *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw*, 546 U.S. at 76). Specifically with regard to jurisdictional issues, the Sixth Circuit has stated that "a state court's interpretation of state jurisdictional issues conclusively establishes jurisdiction for purposes of federal habeas review." *Strunk v. Martin*, 27 Fed.Appx. 473, 475 (6th Cir. 2001). Accordingly, this Court is bound by the state court's determination that jurisdiction over Petitioner was established.

To the extent Petitioner intended to challenge the validity of his arrest as an issue distinct from his jurisdictional challenge, his claim is also not cognizable. *See Gerstein v. Pugh*, 420 U.S. 103, 119 (1975) (illegal arrest or detention does not void a subsequent conviction). The method by which Petitioner's presence was procured at trial does not provide a basis for invalidating his criminal conviction. *See Immigration & Naturalization Serv. v. Lopez-Mendoza*, 468 U.S. 1032, 1039 (1984) ("The 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred."); *Frisbee v. Collins*, 342 U.S. 519, 522 (1952); *Ker v. Illinios*, 119 U.S. 436, 444 (1886); *Browning v. Jabe*, No. 88-1307, 1990 WL 6943, at * 1 (6th Cir. Feb. 1, 1990) ("petitioner's arguments that his arrest was absent probable cause . . . [are] irrelevant,

as an unlawful arrest is not a defense to a valid conviction.") (*citing United States v. Crews*, 445 U.S. 463, 474 (1980)). Accordingly, any procedural improprieties in connection with Petitioner's arrest would not warrant habeas relief.

Similarly, Petitioner's contention that the police may have obtained evidence in violation of the Fourth Amendment will not support habeas relief. In *Stone v. Powell*, 428 U.S. 465 (1976), the Supreme Court held that federal habeas review is not available to a state prisoner alleging that his conviction rests on evidence obtained through an unconstitutional search or seizure, as long as the state has given the petitioner a full and fair opportunity to litigate the Fourth Amendment claim. *Id.*; *see also Rashad v. Lafler*, 675 F.3d 564, 570 (6th Cir. 2012).

In order for the rule of *Stone v. Powell* to apply, the state must have provided, in the abstract, a mechanism by which to raise the Fourth Amendment claim, and the presentation of the claim in the case before the court must not have been frustrated by failure of that mechanism. *See Gilbert v. Parke*, 763 F.2d 821, 823 (6th Cir. 1985). If these two inquiries are satisfied, federal habeas review of the Fourth Amendment claim is precluded, even if the federal court deems the state-court determination of the claim to have been in error. *Id.* at 824; *accord Jennings v. Rees*, 800 F.2d 72 (6th Cir. 1986); *Markham v. Smith*, 10 F. App'x 323, 326 (6th Cir. 2001).

In the present case, Petitioner cannot satisfy either prong of the *Stone v. Powell* standard. First, it is beyond dispute that Michigan has a state procedural mechanism that presents a defendant a full opportunity to raise a Fourth Amendment claim before trial. Even before the United States Supreme Court decided that the federal exclusionary rule applied to state criminal proceedings, the Michigan courts applied the exclusionary rule to the fruits of unconstitutional searches and seizures. *See People v. Margelis*, 186 N.W. 488 (Mich. 1922). After *Mapp v. Ohio*,

367 U.S. 643 (1961), the Michigan courts consistently have acknowledged their duty, under both the federal and state constitutions, to suppress evidence seized in violation of the Fourth Amendment. *See, e.g., People v. David*, 326 N.W.2d 485, 488 (Mich. Ct. App. 1982). Consequently, Michigan affords criminal defendants a vehicle by which to raise Fourth Amendment challenges.

Second, to satisfy the remaining prong of *Stone v. Powell*, Petitioner must allege facts showing that the state corrective mechanism has somehow broken down. *See, e.g., Agee v. White*, 809 F.2d 1487, 1490 (11th Cir. 1987) (habeas review not barred when state appellate court completely ignored Fourth Amendment claim). The Sixth Circuit pointedly has held that the doctrine of *Stone v. Powell* applies, even if the federal court deems the state-court determination of the Fourth Amendment claim to have been in "egregious error." *Gilbert v. Parke*, 763 F.2d at 824 (citing *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982)).

Petitioner has not alleged any facts showing that the state's mechanism has broken down. The "mechanism" was never required to operate. It was obviated by Petitioner's entry of a plea. Petitioner's plea, in turn, operated as a waiver of any claim of an illegal search or seizure. A valid guilty (or *nolo contendere*)[4] plea bars habeas review of most non-jurisdictional claims alleging

---

[4]In Michigan, a plea of *nolo contendere* has essentially the same effect on the criminal prosecution as does a plea of guilty:

> Since a plea of *nolo contendere* indicates that a defendant does not wish to contest his factual guilt, any claims or defenses which relate to the issue of factual guilt are waived by such a plea. Claims or defenses that challenge a state's capacity or ability to prove defendant's factual guilt become irrelevant upon, and are subsumed by, a plea of *nolo contendere*. Hence, we hold that a plea of *nolo contendere* has the same effect upon a defendant's ability to raise an issue on appeal as does a plea of guilty. Only those defenses which challenge the very authority of the state to prosecute a defendant may be raised on appeal after entry of a plea of *nolo contendere*.

*People v. New*, 398 N.W.2d 358, 363 (Mich. 1986) (footnotes omitted). Thus, a plea of *nolo contendere* waives a claim that the evidence of guilt is insufficient in the same way that a plea of guilty does. *See Post v. Bradshaw*, 621 F.3d 406, 426-27 (6th Cir. 2010); *United States v. Freed*, 688 F.2d 24, 25-26 (6th Cir. 1982).

antecedent violations of constitutional rights. *See Tollett*, 411 U.S. at 267. Claims about the deprivation of constitutional rights that occur before the entry of a guilty plea are foreclosed by that plea. *See United States v. Broce*, 488 U.S. 563, 569 (1989); *Tollett*, 411 U.S. at 267. As the United States Supreme Court has explained:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [constitutional standards].

*Tollett*, 411 U.S. at 267. Accordingly, Petitioner's Fourth Amendment claim is barred by *Stone v. Powell* and waived by his plea.

### III.   The validity of Petitioner's plea (Habeas issues 3 and 4)

Petitioner challenges the validity of his plea in three ways: first, he claims the state did not have power to bring him into court (the jurisdictional challenge addressed above); second, he claims the court did not have a factual foundation to accept the plea; and third, he contends that he was coerced into entering the plea.

It has long been the case that a valid guilty plea bars habeas review of most non-jurisdictional claims alleging antecedent violations of constitutional rights. *See Tollett*, 411 U.S. at 267. Among claims not barred are those that challenge "the very power of the State to bring the defendant into court to answer the charge against him," *Blackledge v. Perry*, 417 U.S. 21, 30 (1974), and those that challenge the validity of the guilty plea itself. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *Haring v. Prosise*, 462 U.S. 306, 320 (1983); *Tollett*, 411 U.S. at 267. As detailed above, Plaintiff's contention that the Genessee County Circuit Court did not have the power to prosecute

him for first-degree or second-degree murder has no merit. As set forth below, Petitioner's contention that his guilty plea was otherwise invalid is also meritless.

### A.    Factual basis for the plea

Petitioner presents extensive arguments concerning the adequacy of the factual basis for the plea. The requirement that the court establish a factual basis for a guilty plea is a creature of rule, not the federal Constitution. While states are free to adopt procedural rules requiring a factual basis as Michigan has done in MICH. CT. R. 6.610(E)(1)(a), the Federal Constitution does not mandate them to do so. *See North Carolina v. Alford*, 400 U.S. 25, 37-38 (1970); *Roddy v. Black*, 516 F.2d 1380, 1385 (6th Cir. 1975); *accord Meyers v. Gillis*, 93 F.3d 1147, 1152 (3d Cir. 1996); *United States v. McGlocklin*, 8 F.3d 1037, 1047 (6th Cir. 1993) (en banc) (implicitly overruled on other grounds by *Custis v. United States*, 511 U.S. 485 (1994)). Petitioner's contention that the trial court relied upon improper sources to establish the factual foundation for Petitioner's plea thus raises only state law issues that are not cognizable on habeas review.

### B.    Coerced plea

The test for determining a guilty plea's validity is "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill*, 474 U.S. at 56 (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). Courts assessing whether a defendant's plea is valid look to "all of the relevant circumstances surrounding it," *Brady v. United States*, 397 U.S. 742, 749 (1970). In order to find a guilty plea constitutionally valid, several requirements must be met. The defendant pleading guilty must be competent, *see Brady*, 397 U.S. at 756, and must have notice of the nature of the charges against him, *see Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976); *Smith v. O'Grady*, 312 U.S. 329, 334 (1941). The plea must be

entered "voluntarily," i.e., not be the product of "actual or threatened physical harm, or . . . mental coercion overbearing the will of the defendant" or of state- induced emotions so intense that the defendant was rendered unable to weigh rationally his options with the help of counsel. *Brady*, 397 U.S. at 750; *Machibroda v. United States*, 368 U.S. 487, 493 (1962) ("A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void."). The defendant must also understand the consequences of his plea, including the nature of the constitutional protection he is waiving. *Henderson*, 426 U.S. at 645 n.13; *Brady*, 397 U.S. at 755; *Machibroda*, 368 U.S. at 493 ("Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences.") (internal quotations and citation omitted). Finally, the defendant must have available the advice of competent counsel. *Tollett*, 411 U.S. at 267-68; *Brady*, 397 U.S. at 756; *McMann v. Richardson*, 397 U.S. 759, 771 & n.14 (1970). The advice of competent counsel exists as a safeguard to ensure that pleas are voluntarily and intelligently made. *Cf. Henderson*, 426 U.S. at 647 ("[I]t may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit."); *Brady*, 397 U.S. at 754 (suggesting that coercive actions on the part of the state could be dissipated by counsel). Ineffective assistance of counsel will render a plea of guilty involuntary. *See Hill*, 474 U.S. at 56-57.

       Here, Petitioner contends his plea was coerced because his counsel (and then the court) emphasized that if he went to trial on the charge of first-degree murder and the jury found him guilty, he would be sentenced to life in prison without the chance of parole. Petitioner contends counsel's behavior was coercive and was constitutionally ineffective assistance.

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

The two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). Regarding the first prong, the court applies the same standard articulated in *Strickland* for determining whether counsel's performance fell below an objective standard of reasonableness. *Id.* In analyzing the prejudice prong, the focus is on whether counsel's constitutionally deficient performance affected the outcome of the plea process. "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a

reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id*. at 59.

The trial court concluded that Counsel's emphasis on the penalty for the charged crime cannot be considered ineffective assistance that rendered the plea involuntary:

> Defendant's argument that his trial attorney was ineffective because he assumed Defendant's guilt and told Defendant that he would spend the rest of his life in prison if he rejected either of the prosecution's plea offers seems to be effective and <u>excellent</u> advice considering that Defendant's co-defendant is now spending the rest of his life in prison following his 1st degree murder conviction at trial.

(Ord., ECF No. 6-13, PageID.477) (emphasis in original).

As the Supreme Court has observed, while "'[s]urmounting *Strickland*'s high bar is never an easy task,' . . . [e]stablishing that a state court's application was unreasonable under § 2254(d) is all the more difficult." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S. Ct. 1473, 1485 (2010)). Because the standards under both *Strickland* and § 2254(d) are highly deferential, "when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). In those circumstances, "[t]he question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

In this instance, the court's conclusion with regard to the first prong of *Strickland* is eminently reasonable. At the time of Petitioner's plea, Petitioner could either proceed to trial where he would have to overcome: (1) his videotaped and audiotaped confession made the day after the murder; and (2) a fully-developed prosecution case honed by the prior first-degree murder trial and conviction of his co-defendant. Counsel's emphasis on the consequences of conviction under those circumstances falls well within the wide range of professionally competent assistance. Indeed,

disclosing the direct consequences of Petitioner's various courses of action is not only permitted, it is mandated. *King v. Dutton*, 17 F.3d 152, 153-154 (6th Cir. 1994) (defendant must be "aware of the direct consequences of the plea. . . . [including] the maximum sentence that could be imposed."); *Boyd v. Yukins*, 99 F. App'x 699, 703 (6th Cir. 2004) ("[T]he defendant must be informed about any mandatory minimum sentences . . . .").

Additionally, the record belies Petitioner's claim that his attorney threatened him or that he perceived his attorney's statements as threats. When a state defendant brings a federal habeas petition challenging the voluntariness of his plea, the state generally satisfies its burden of showing a voluntary and intelligent plea by producing a transcript of the state-court proceeding. *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993); *see also McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (citing *Garcia*, 991 F.3d at 326). Where the transcript is adequate to show that the plea was voluntary and intelligent, a presumption of correctness attaches to the state court findings of fact and to the judgment itself. *Id.* A satisfactory state-court transcript, containing findings after a proper plea colloquy, places upon petitioner a "heavy burden" to overturn the state findings. *Id.* at 328; *see also Parke v. Raley*, 506 U.S. 20, 29 (1992) (holding that the factual findings of voluntariness made by the state court are entitled to a presumption of correctness); *Blackledge v. Allison*, 431 U.S. 63, 73 (1977) (a solemn plea of guilty presents a "formidable barrier" to a subsequent claim to the contrary).

Under settled Sixth Circuit authority, Petitioner's responses to the trial judge, given under oath at the plea hearing, preclude a subsequent assertion that the circumstances were different than he represented at the hearing. In *Baker v. United States*, 781 F.2d 85 (6th Cir. 1986), the trial court inquired concerning the terms of any plea bargain, received a response from the prosecutor on

the record, and received denials from defense counsel, the prosecutor, and the defendant concerning the existence of any other terms. The Sixth Circuit held that where the trial court has scrupulously followed the required procedure, "the defendant is bound by his statements in response to that court's inquiry." 781 F.2d at 90 (quoting *Moore v. Estelle*, 526 F.2d 690, 696-97 (5th Cir. 1976)). The Sixth Circuit, noting the obvious, observed that a trial judge cannot possibly administer a plea agreement, if it consists of "secret terms known only to the parties." *Id.* at 90. Furthermore, because defendant's later claim of a secret agreement was negated by the trial record; no evidentiary hearing was required. *Id.* at 92. The court again addressed this issue in *Warner v. United States*, 975 F.2d 1207 (6th Cir. 1992), and *United States v. Todaro*, 982 F.2d 1025 (6th Cir. 1993), also section 2255 cases. In *Todaro*, the defendant attempted to attack his guilty plea, claiming that his attorney had promised him that he would be sentenced to probation if he pled guilty. The defendant had testified at the plea colloquy, however, that no other promises had been made to him, other than those stated in the plea agreement. 982 F.2d at 1026. Consequently, the Sixth Circuit was again faced with a situation in which a defendant's post-conviction allegations were directly contrary to his statements at the plea hearing. Relying on *Baker*, the court reiterated its earlier holding, under which a defendant is bound by his statements in response to the trial court's inquiry, where there has been a careful plea colloquy. In *Warner*, the Sixth Circuit likewise rejected claims of attorney promises in the face of defendant's flat denial of promises at the plea, holding that the petitioner's statements "estopped" him from relying on undisclosed promises. 975 F.2d at 1210.[5] *See also Ramos v. Rogers,*

---

[5] Thereafter, the court in *Peavy v. United States*, 31 F.3d 1341 (6th Cir. 1994), ordered an evidentiary hearing to inquire into allegations of an undisclosed plea agreement. The *Peavy* court noted that the government admitted the existence of an oral plea agreement, not reflected at the plea hearing. The court was careful to observe that the trial court had not directly asked the defendant whether there were any promises apart from the plea agreement. "Such inquiries would have prompted disclosure of the promises on which Peavy relies here, or, if Peavy had remained silent, likely would foreclose his post-conviction reliance on [those] promises." 31 F.3d at 1345.

170 F.3d 560, 565 (6th Cir. 1999) (concluding that "a claim of ineffective assistance of counsel predicated on allegedly misleading information given by counsel about the terms of a plea agreement can never constitute an 'extraordinary circumstance' under *Baker* when the court conducts a proper, clear, and thorough plea colloquy").

Here, Petitioner specifically represented that he had not been threatened. (Plea Hr'g II, ECF No. 6-9, PageID.383.)[6]

Moreover, even if the record supported the conclusion that counsel overemphasized the consequences of proceeding to trial (and it does not), Petitioner could not demonstrate prejudice. On the first day scheduled for Petitioner's trial, after learning that Petitioner was interested in pleading *nolo contendere*, the trial court carefully reviewed with Petitioner the possible outcomes. (PageID.375-380.) Petitioner acknowledged that he understood the jury could find him not guilty, that the jury could find him guilty of a lesser charge, that the jury could find him guilty of first-degree murder and that, then, he would be sentenced to life in prison without the possibility of parole. (*Id*.) Petitioner further acknowledged that he also understood the likely range of minimum sentences under the guidelines, that the prosecutor intended to ask for a departure above that range, and that his counsel would argue for a minimum sentence within that range. (*Id*.) If counsel's "threats" had caused Petitioner any misperceptions regarding the range of outcomes, the trial court corrected those misperceptions at the plea hearing. *Ramos*, 170 F.3d at 565. ("[T]he state trial court's proper colloquy can be said to have cured any misunderstanding Ramos may have had about

---

[6]Petitioner cannot claim his denial was unknowing. Petitioner specifically denied such threats even though he had previously suggested that his counsel "threatened" him with a life sentence in connection with his first plea. (Mot. Hr'g Tr. I, ECF No. 6-8, PageID.354.) Thus, he certainly cannot claim he was not cognizant of the "threat" at his second plea hearing when he told the court he had not been threatened.

the consequences of his plea.") Accordingly, Petitioner has failed to show that he suffered any prejudice as a result of counsel's alleged misadvice.

IV.    Other ineffective assistance of trial counsel (Habeas issue 5)

Petitioner also claims that his trial counsel rendered constitutionally ineffective assistance because counsel failed to conduct an independent investigation, never filed pretrial motions, had no defense, acknowledged a breakdown in the attorney-client relationship, and failed to earn Petitioner's confidence. (Pet., ECF No. 1, PageID.9-10.)  As set forth above, *see* § II *infra*, a valid guilty plea bars habeas review of most non-jurisdictional claims alleging antecedent violations of constitutional rights.  Consequently, a knowing and voluntary guilty plea waives all nonjurisdictional defects in the proceedings, including a claim of ineffective assistance of counsel that does not relate to the voluntariness of the plea.  *See Rice v. Olson*, No. 16-1125, 2016 WL 3877866, at *2 (6th Cir. Jul. 15, 2016) (citing *United States v. Stiger*, 20 F. App'x 307, 308–09 (6th Cir. 2001)).

Petitioner's claims of ineffective assistance (other than those addressed in § III, above) do not attack the voluntary or intelligent nature of his plea by showing that counsel's advice was inadequate with respect to the plea, but instead relate to earlier alleged attorney failures.  As is apparent from the record, on April 18, 2012, after Petitioner's initial plea and after he refused to testify as required by the plea agreement, Petitioner raised his objections to counsel's performance and requested new counsel.  (Mot. Hr'g Tr. I, ECF No. 6-8.)  He raised concerns again at his second plea hearing.  (Plea Tr. II, ECF No. 6-9.)  Only after the court informed Petitioner that he would not be entitled to the appointment of new counsel did Petitioner decide to enter a plea.  Petitioner's claims therefore have been waived by his subsequent plea.  *See Stiger*, 20 F. App'x at 308-09; *see*

*also Parisi v. United States*, 529 F.3d 134, 138-39 (2d Cir. 2008) (claims of ineffective assistance with respect to matters preceding the plea agreement are waived by a guilty plea); *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992) (guilty plea waives claims concerning pre-plea ineffective assistance of counsel); *United States v. Bohn*, 956 F.2d 208, 209 (9th Cir. 1992) (pre-plea ineffective assistance of counsel claims are waived). Petitioner, therefore, is not entitled to habeas corpus relief on the alleged errors in counsel's performance.

## V. Ineffective assistance of appellate counsel (Habeas issue 6)

Finally, Petitioner contends his appellate counsel failed to render effective assistance because he failed to challenge the ineffective assistance of trial counsel. An appellant has no constitutional right to have every non-frivolous issue raised on appeal. "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)). To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 688. As the Supreme Court recently has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 259, 289 (2000). In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present." *Id.*

Petitioner's claims of ineffective assistance of trial counsel relating to the plea are, as set forth above, without merit. Petitioner's claims of ineffective assistance of trial counsel before

the plea are waived by the plea. *See* n. 4 and § V *infra*. Petitioner identifies two "post-plea" instances of ineffective assistance of trial counsel that appellate counsel should have raised: (1) "trial counsel did not object to the trial court using unsupported facts to go outside the Petitioner's guidelines," (Pet., ECF No. 1, PageID.10-11), and (2) "trial counsel failed to object to the trial court going outside Petitioner's guidelines without substantial and compelling reasons" (*Id*.).

Petitioner does not identify the "unsupported facts" that trial counsel failed to contest. Petitioner's counsel objected to the scoring of Offense Variable 5 regarding psychological injury to family members. (Sentencing Tr., ECF No. 6-10, PageID.390-391.) The court sustained that objection changing the score from 15 to 0. (*Id*.) Petitioner's counsel unsuccessfully challenged the scoring of 50 points for causing death under the influence of drugs or alcohol under Offense Variable 3. (*Id*., PageID.392-393.) Petitioner's counsel unsuccessfully challenged the scoring of 15 points under Offense Variable 8 regarding the victim's transportation or captivity. (*Id*., PageID.393-394.) Petitioner's counsel did not challenge the facts underlying the scoring of 50 points on Offense Variable 6 regarding intent to kill. Instead, he used the underlying facts to demonstrate to the court that such facts were already taken into account in the guidelines scoring such that departure was not warranted. (Id., PageID.395.) Thus, Petitioner's counsel clearly argued that the court should not depart from the guidelines.

Put simply, the record provides no support for Petitioner's otherwise unexplained assertions that his trial counsel failed to object at sentencing to unsupported facts or the court's departure from the guideline. Accordingly, any claim that trial counsel rendered ineffective assistance because of these "failures" would be meritless. Moreover, it follows that appellate counsel's decision to not raise these "failures" on appeal cannot be considered ineffective assistance

under *Strickland*. The Sixth Circuit has held that "'appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit.'" *Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). *See also Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010). "Omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013).

### Recommended Disposition

For the foregoing reasons, I respectfully recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied. See *Slack v. McDaniel*, 529 U.S. 473 (2000).

Dated:  April 19, 2017                    /s/ Ray Kent_____
                                          RAY KENT
                                          United States Magistrate Judge

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).